IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CT-3177-D

MARC CHRISTOPHER TURNER, )
)
                Plaintiff, )
)
v. ) **ORDER**
)
FEDERAL BUREAU OF PRISONS, et al., )
)
                Defendants. )

      On September 16, 2011, Marc Christopher Turner ("Turner") filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) [D.E. 1]. On May 1, 2012, the court reviewed the action pursuant to 28 U.S.C. § 1915 and allowed it to proceed, but dismissed any claim that Turner may have asserted on behalf of any other person, along with any claim against Harley Lappin or the Bureau of Prisons [D.E. 6]. On September 26, 2012, the remaining defendants filed a motion to dismiss [D.E. 17], along with the declaration of Cornelia J. Coll, a paralegal specialist [D.E. 18-1]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Turner about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 19]. Turner sought and obtained an extension of time in which to respond to the motion [D.E. 20–21], but did not file any response in opposition. The time within which to do so has expired.

      When Turner filed his complaint, he was a civil detainee awaiting a hearing on the government's petition for his commitment pursuant to 18 U.S.C. § 4248. Compl. [D.E. 1] 5. On February 27, 2012, the court held a bench trial to determine whether Turner should be committed under section 4248. See United States v. Turner, No. 5:07-HC-2167-D-JG, [D.E. 103] (E.D.N.C.

Feb. 27, 2012). On March 9, 2012, the court announced its ruling that the United States had failed to prove by clear and convincing evidence that Turner was "sexually dangerous" under section 4248. See id., [D.E. 107, 108] (E.D.N.C. Mar. 9, 2012). Accordingly, the court ordered the United States to release Turner from the custody of the BOP, and he has been released. See Coll Decl. ¶ 6.

Turner contends that his placement in the Commitment and Treatment Program ("CTP") "and forcing him to be a part of a behavior modification program" before any adjudication of the commitment petition against him violates due process. Compl. 10. Turner also challenges various aspects of his confinement in the CTP. Turner alleges generally that he "is in the physical presence of prisoners serving criminal sentences on a daily basis," including in "the prison mess hall" and on his housing unit. Id. 6–7. Turner alleges that he "is not afforded the same educational and vocational opportunities as general population prisoners." Id. 7. Turner challenges several conditions of confinement, including being "double bunked in a room" with another detainee, disparities in recreation time and amenities, disparities in access to the prison laundry, being forced to use the prison commissary for purchases, being limited in what he may watch on television, being denied access to an inmate email account, being required to leave his outgoing mail unsealed for inspection, and having incoming mail intercepted and rejected. Id. 7–9, 12. Turner also asserts that he has been placed in solitary confinement on two occasions even though he "has yet to break an institutional rule." Id. 8. Finally, Turner challenges "mass 'shakedowns' of his person, property, and cell by BOP staff." Id. 11–12. Turner seeks injunctive relief and $18,000,000 in punitive damages because "the defendants knew the requirements of the law in dealing with civil detainee/mental health patients as far as living conditions and treatment" and "chose to ignore the law." Id. 14–16; [D.E. 4] 1. As for the named defendants, Turner alleges generally that "Tracy Johns and Karen Steinour are directly responsible for all claims in this petition." Compl. 13.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Turner's request for equitable and injunctive relief is moot due to his release from confinement. See Rendelman v. Rouse, 569 F.3d 182, 186–87 (4th Cir. 2009); Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (per curiam). Thus, the court dismisses Turner's request for equitable and injunctive relief as moot.

Next, the court addresses Turner's claim that his confinement in the CTP before the court's adjudication of the commitment petition against him violated due process. Turner's claim fails. See United States v. Timms, 664 F.3d 436, 450–55 (4th Cir.), cert. denied, 133 S. Ct. 189 (2012). Accordingly, the court dismisses the claim.

As for Turner's remaining claims, the Fifth Amendment generally prohibits the federal

3

government from subjecting civilly committed persons to punitive confinement conditions. See Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982); Bell v. Wolfish, 441 U.S. 520, 535–37 (1979); Jones v. Blanas, 393 F.3d 918, 931–32 (9th Cir. 2004). When determining whether a civil detainee's confinement conditions violate the Fifth Amendment, courts must balance the detainee's constitutionally protected liberties with the government's reasons for restricting those liberties. See Youngberg, 457 U.S. at 320–22. "[D]ue process requires that the conditions and duration of confinement [for a civilly committed person] bear some reasonable relation to the purpose for which [the person is civilly] committed." Seling v. Young, 531 U.S. 250, 265 (2001). Nevertheless, government officials are permitted to determine the conditions of a detainee's confinement, within the bounds of professional discretion. See Youngberg, 457 U.S. at 321–22. The Constitution is not concerned with de minimis restrictions on a detainee's liberties. Id. at 320; see Jones, 393 F.3d at 932.

As for Turner's allegation that he was "in the physical presence of prisoners serving criminal sentences on a daily basis," including in "the prison mess hall" and on his housing unit, Compl. 6–7, the occasional commingling of civil detainees with inmates does not, without more, violate the Fifth Amendment. See Hood v. Johns, No. 5:11-CT-3072-FL, 2012 WL 3839987, at *5 (E.D.N.C. Sept. 5, 2012) (unpublished); Silvera v. Conn. Dep't of Corr., 726 F. Supp. 2d 183, 195–96 (D. Conn. 2010); Young v. Monahan, No. 07C1193, 2008 WL 182244, at *3 (N.D. Ill. Jan. 16, 2008) (unpublished); Burciaga v. Cnty. of Lenawee, 123 F. Supp. 2d 1076, 1078–79 (E.D. Mich. 2000). Thus, Turner fails to state a claim under the Fifth Amendment.

As for Turner's complaints that he was subject to certain general BOP policies, including being forced to use the prison commissary for purchases and being limited in what he may watch on television, placement of a civil detainee "in a prison, subject to the institution's usual rules of

4

conduct," does not per se signify punishment. See, e.g., Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003). Hence, the court dismisses these claims.

As for Turner's claims concerning his mail and access to an email account, assuming without deciding that Turner had a generalized First Amendment right to send correspondence to persons of his choosing, see, e.g., Thornburgh v. Abbott, 490 U.S. 401, 411–12 (1989), he has no unqualified right to receive mail, particularly packages, which "are handy devices for the smuggling of contraband." Bell, 441 U.S. at 555; see Turner v. Safley, 482 U.S. 78, 89–90 (1987). Quite understandably, the BOP has a number of regulations concerning mail. See, e.g., Thornburgh, 490 U.S. at 415–19; United States v. Gordon, 168 F.3d 1222, 1228 (10th Cir. 1999); United States v. Stotts, 925 F.2d 83, 84–90 (4th Cir. 1991). Moreover, in the civil commitment context, courts have repeatedly upheld institutional rules concerning restrictions on mail and electronic access. See, e.g., Rivera v. Rogers, 224 F. App'x 148, 151 (3d Cir. 2007) (per curiam) (unpublished); Graham v. Main, Civil Action No. 10-5027(SRC), 2011 WL 2412998, at *13–14 (D.N.J. June 9, 2011) (unpublished); Burch v. Jordan, No. 07-3236, 2010 WL 5391569, at *21 (D. Kan. Dec. 22, 2010) (unpublished), aff'd, 444 F. App'x 236 (10th Cir. 2011) (unpublished); Semler v. Ludeman, Civil No. 09-0732 ADM/SRN, 2010 WL 145275, at *9–16 (D. Minn. Jan. 8, 2010) (unpublished); Spicer v. Richards, No. C07-5109 FDB, 2008 WL 3540182, at *7–8 (W.D. Wash. Aug. 11, 2008) (unpublished).

Notably, Turner does not allege that the treatment of his incoming or outgoing mail violated any BOP regulation, or that his mail was rejected for any reason other than "legitimate security interests," Turner, 482 U.S. at 91, or for rehabilitative purposes. See Rivera, 224 F. App'x at 151. Moreover, Turner does not allege that any of the mail at issue was legal mail, which is entitled to a higher level of deference from prison officials. See Wolff v. McDonnell, 418 U.S. 539, 575–77

5

(1974); see also Turner, 482 U.S. at 84. Additionally, Turner has no generalized constitutional right to his choice of a method of communication, even to contact an attorney. See, e.g., Saunders v. Dickerson, No. 1:07cv1094(LMB/BRP), 2008 WL 2543428, at *4 (E.D. Va. June 25, 2008) (unpublished), aff'd, 313 F. App'x 665 (4th Cir. 2009) (per curiam) (unpublished). Turner has not alleged that he has been denied all means of communication, only that he was not allowed to have an e-mail account and had to leave his outgoing mail unsealed. Thus, the court dismisses Turner's claims concerning mail and e-mail.

As for Turner's claims concerning double bunking, disparities in recreation time and amenities, access to the prison laundry, and opportunities for vocational or educational training, Turner is not constitutionally entitled to the same access to prison amenities as inmates. He is entitled to conditions which do not "amount to punishment." Bell, 441 U.S. at 535. Turner has not alleged that he was denied all recreation or access to other amenities, only that he was allowed access to these amenities on a different schedule from prisoners. Cf. Rainwater v. McGinniss, No. 2:10-cv-1727GGH P, 2012 WL 3276966, at *11–12 (E.D. Cal. Aug. 9, 2012) (unpublished); Creveling v. Johnson, Civil Action No. 11-667(SDW), 2011 WL 3444092, at *5–6 (D.N.J. Aug. 4, 2011) (unpublished). Additionally, Turner has no constitutional right to the opportunity to participate in vocational, educational, recreational, and rehabilitative programs. See, e.g., McKune v. Lile, 536 U.S. 24, 38–39 (2002); Sandin v. Conner, 515 U.S. 472, 484 (1995); McNeal v. Mayberg, No. 1:07-cv-00851-GSA (PC), 2008 WL 5114650, at *10–11 (E.D. Cal. Dec. 4, 2008) (unpublished). Accordingly, Turner fails to state a claim concerning these issues.

As for Turner's claim that he has twice been placed in segregation, the claim fails. See, e.g., West v. Schwebke, 333 F.3d 745, 748 (7th Cir. 2003); Creveling, 2011 WL 3444092, at *7–8. Hence, the court dismisses Turner's claim.

6

Finally, as for Turner's challenge to "mass 'shakedowns' of his person, property and cell by [unspecified] BOP staff," Turner has not sufficiently connected the named defendants to this claim. A Bivens action may not be grounded upon a respondeat superior theory. See, e.g., Iqbal, 556 U.S. at 676; Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor may be held responsible for a subordinate's unconstitutional act only if the supervisor was involved personally or participated in the unconstitutional act. See, e.g., Iqbal, 556 U.S. at 676. Thus, a plaintiff must show that (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction" and plaintiff's alleged constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). Turner alleges that Johns and Steinour "are directly responsible for all claims in this petition" because "[t]he violation of [his] rights would not be possible without [their] approval." Compl. 13. The allegation is insufficient to hold these defendants liable for the acts of others. Accordingly, the court dismisses the claim.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 17], and DISMISSES the action for failure to state a claim. The clerk shall close the case.

SO ORDERED. This 18 day of April 2013.

JAMES C. DEVER III
Chief United States District Judge